Thank you, counsel, for your patience in waiting. Good morning. May it please the Court, hopefully last but not least here. My name is Kendra Hutchinson. I, with the Federal Defenders, and I'm representing the appellant in this matter, Mr. Acevedo. We'd like to focus on the sentencing argument. We'd like to, we intend to rest on our briefs as to the Second Amendment argument because I understand that this case, that issue is pending before numerous other panels of this, of this Court. So... Can I ask you, on that issue, the Bruin issue, is there a particular case in the queue, if you're familiar? And I'll ask the government the same question. You don't have to answer that now, but is there a particular case where the underlying conviction, felony conviction, is similar to any one of the cases in the queue? You don't have to answer that now, but... Okay. I understand Your Honor's question, and I actually don't have the answer to that. I can tell you that I know that the Court is, the earliest case in the queue is United States v. Thoney, but I don't know that that has the same facts as this case, Your Honor. So moving on to the sentencing point, two years ago in United States v. Taylor, the Supreme Court made it clear that attempted Hobbs Act robbery is not a crime of violence. For crime of violence purposes, there is no principal difference between New York attempted robbery and attempted Hobbs Act robbery. Accordingly, it, too, is not a crime of violence, and resentencing should be ordered. You know, to begin with Taylor, I think that that leads us sort of directly to the New York crime at issue here. So in Taylor, the Supreme Court, you know, noted the hypothetical that really broke the crime of violence link. And this hypothetical was that, you know, a bank robber could attempt to pass a note that threatened violence, but be caught before he could, you know, be caught before that note was passed. And the Supreme Court held that an attempted threat does not meet the force or elements clause, because it is not the use or the attempted use or the threat of physical force. New York attempted robbery is the same. And the case that we rely on is this case of the New York Court of Appeals, People v. Lamont. In that case, the Court of Appeals, the New York Court of Appeals held that it was legally sufficient that two individuals were caught in the act prior to doing anything, caught in the act of attempting to threaten the employees in order to obtain money. There is no principal difference between Lamont and Taylor. Let me make sure I am focusing on your argument correctly. These cases that you're citing arise in the guideline context or in the statutory context? Great question, Your Honor. You know, Taylor concerns 924C, 18 U.S.C. 924C. Lamont, the issue in this case is a career offender guidelines definitional issue. Right. Because if I'm correct, the courts have the Court has held that what something means for guideline purposes can be different from what it means in the categorical statutory context. So that's why I want to make sure I'm correctly focusing on the point you're making now. Yes. And the thing here is that the force and elements clause that Taylor analyzed and the one in this instance, Your Honor, that is the 4B1.2 definition is exactly the same here, that the crime of violence is a felony that has as an element the use, attempted use, or threatened use of physical force against the person of another. Of course, 924C has the property of another as well, but this is narrower than that. So in this context, the interpretation of crime of violence must necessarily be the same. Now, this Court has not been able to address this issue. I want to specifically include an attempt to commit a crime that uses force, these traditional violent crimes, murder, et cetera. It specifically says for calculating the guidelines, treat attempt the same as the completed crime. What is your challenge here? I mean, I understand where when a statute uses the term crime of violence and the Supreme Court has given us the standard for categorical analysis, that might not fit. But why not for the guidelines? Sure. The 2023 version of the guidelines and onward, so the 2024, which is the one we're in now, that one does indeed include within the guidelines the, I think it's 4B1.2D, I believe it is. Right. And the 2021 version includes it in the commentary. It includes it in the commentary, Your Honor. That's exactly right. All right. And in this instance, this Court should not give effect to the commentary. Now, I just want to acknowledge that in the meantime, like in the middle of briefing of this case, this Court has held in a number of cases that United States, that Kaiser v. Wilkie does not overrule or affect, you know, the Court's analysis under Stinson, you know, about how to analyze the deference to give to commentary. You know, neither of the parties have, you know, briefed that because that happened just recently in the last couple of weeks. But it is our argument that under the Stinson standard, by which this Court and the Supreme Court judges the guidelines commentary, that the commentary that Your Honor is referring to in the 2021 guidelines commentary is inconsistent with the guideline itself. That is the position here, that under Stinson, this meets that test, or rather fails Stinson, really, that the defining, the commentary defining an attempted robbery as a crime of violence is inconsistent with the guideline. Can I ask? Yes. Please, go ahead. How much do we have to delve into any of this, given the district court's statements of sentencing suggesting that it would have departed upward, that this was going to be the sentence regardless of the guidelines? Sure. So, you know, we address this in our briefing, but, you know, in getting ready for argument before Your Honor, I thought a little bit more hard about this. And so the guideline range that the Court calculated before, and the one that we're And so the Court downwardly departed to get to the 96 months here. The range that we are stating is the correct range, Your Honor, is actually 92 to 115. So the Court stating, I would upwardly vary, doesn't actually really, you know, doesn't actually approach the sentence we have here. The sentence that he got is in the range of the guidelines that he would have gotten, but the Court actually granted him a substantial downward variance. So, in fact, this is not an unequivocal statement that the same sentence would have been imposed, Your Honor. I mean, had the judge said I would give 96 months no matter what, I mean, I think we might be in a different position. But this is not an unambiguous statement. Help me out on that. Sure. You're saying it's within the guideline range. It's not a variance or an upward departure. Yes. But that only seems to reinforce rather than undermine the conclusion that this was the sentence the district court thought was warranted by the statutory factors. The problem is, Your Honor, is that if the correct guidelines range were applied, 92 to 115, if the Court had correctly calculated it, she would not be able to upwardly vary to get to this sentence of 96. So, in fact, that doesn't actually support it. It's not an upward variance at all. It would have been 96 months. That's right. And so that's why stating that there would be an upward variance does not actually really, truly is not unambiguous in this context, Your Honor. And the Court has in the past found unambiguous statements where a court has explicitly said I would impose 96 months. That is not. So what you want is the Court said it would vary upward, but it didn't vary upward even. So you want us to send it back to say, well, if you want to vary upward, you have to go higher than this. Well, I think, Your Honor, I mean, I think that, obviously, I don't want that. But this is not an unambiguous statement. And I think if it's sort of breaking either way in this instance. So the question I was going to ask you was precisely this question about, you know, even if it were error in the calculation, isn't it harmless error? Because I think we have to put what the judge said in context. Prior to making the statement that it would be varying upward if your guidelines calculation was determined to be correct, in response to the defense's argument that the calculation was wrong, earlier the Court said I want to be made clear my thoughts about this case, that if indeed the defense was correct about the calculations from the guidelines, I would upwardly vary. If the government were correct with what it had in the Pimentel letter, I would vary downwardly that much more. So, yes, the guidelines matter. And I have done my best to calculate them correctly. But they are just the beginning point for me in this analysis. And the Court, when you take that in context with the response to the defense's arguments for the calculation, what it suggests to me is the Court is saying, look, even if I'm wrong in this calculation and you're right, I would still impose the same sentence. Otherwise, you have the alternative reading, which is what Judge Ranji just suggested, which is go back and then vary upwardly, which I take you don't want that interpretation. Of course not, Your Honor. And you are absolutely right to quote that the judge also said, Judge Bailiff also said, I would downwardly depart if I were adopting the government's entire calculation here. I think the problem is, though, is that, in fact, the guidelines range that we are saying is correct here is one that was not before the Court at all, the 92 to 115. You know, the defense argued that both of the underlying predicates were not crimes of violence and were only attacking one. And the government obviously, you know, had a different argument about that. And the Court, Judge Fala, did not have this correct guidelines range. And I appreciate, Your Honors, trying to, you know, conserve judicial efficiency or something like that, but I would really urge the Court to, if there's any question here, you know, that this is not an unambiguous statement, to, you know, at a minimum ask Judge Fala, like, what if this, you know, maybe it's a Jacobson remand, if that's what the Court would prefer. I mean, you know, that's obviously not our preference, but if that's what the Court needs to do to assure itself that this is the sentence that Judge Fala would have imposed, we'd ask that the Court do it. Now, just to, you know, to keep up to – ooh, I'm a little bit over time. I would like to address – I know that Your Honors are sort of moving past the merits of the issue itself. I just do – I think it's important to note one thing, that this issue is preserved. I know that the government has – has – I don't think there's any question, and in all likelihood, we would suggest some briefing, perhaps, so there'll be an opportunity to argue the substance of the Bruin issue, if that's what you're getting at.  Not the substance of the Bruin issue. Okay. Actually, as to the sentencing issue. I just want to make sure that Your Honor –  Yes. I just want to make sure that Your Honors are – if Your Honors have any questions about the government's preservation arguments, I understand that the Court is trying to keep, you know, a tight timeline here. But I just would note very, very quickly that probation applied the 2021 manual. The Court explicitly adopted the 2021 manual. And I'd like to make – you know, to point out something that I didn't – But you argued for the 2023 manual. Is that correct? Your Honor, we think it is an errant, inartful mistake in defense counsel's papers. That is all. Because defense counsel made an argument that could only be made pursuant to the 2021 guidelines, and, you know, the Court engaged with it fully, as did the government. And I just – I think that is an inartful mistake. Well, the submission specifically said the 2023 should be applied. It did, Your Honor. And I can't sugarcoat that. But we do believe that that was a mistake and that the parties all knew exactly and that the Court knew exactly what was being argued about. I'd also note one last thing, which is that it is true that the 2023 version of the status points was applied to Mr. Acevedo. Something I didn't mention in my reply briefing, and I should have, is that that doesn't violate the one-book rule that he received that status point under the 2023. Thank you, Your Honor. Thank you. And you have reserved your time for rebuttal. Good morning. May it please the Court. I am Nathan Wren, and I'm representing the government on this appeal. I want to pick up on the sentencing issue that the appellant's counsel left off on, which is this issue of whether this issue was preserved, this sentencing issue. The primary reason this Court should affirm the district court's sentencing decision is that the parties asked the district court to apply the 2023 guidelines. The district court applied the 2023 guidelines, and the parties agree that under the 2023 guidelines, the appellant's prior New York conviction for attempted robbery is a crime of violence. That resolves this case full stop. And as, Judge Kearse, you mentioned earlier, the defense did specifically request at Appendix 141 that the district court apply the 2023 guidelines to the guidelines calculation in this case. Defense counsel just mentioned that there was something in the sentencing transcript that suggested that Judge Fela thought she was applying the 2021 guidelines. In fact, the contrary is true, because one of the guidelines issues that was discussed at sentencing was this issue of the criminal history points that should be applied to one of his prior convictions, which was covered by that amendment that was under the 2023 guidelines. And it's actually more significant than that, because if you look at the defendant's sentencing submission in the district court, and you look at the way this argument was presented, it's at Appendix 143 to 145, there's no discussion of Application Note 1. There's no reference to Kaiser v. Wilkie. There's simply a discussion of the application of Taylor to the elements clause in the 2023 guidelines. That's what the argument was that was presented to the district court. Then in the government's sentencing submission, which was responsive to the defendant's sentencing submission, and this is at Appendix 203, the government specifically cited and quoted from the 2023 guideline 4B1.2d, which took the inchoate offenses language about attempts being considered a crime of violence and argued that under 4B1.2d, which only existed in the 2023 guidelines, the appellant's prior New York attempted robbery conviction was a crime of violence. And then when you get to the sentencing transcript, and this is at Appendix 220 to 221, the district court specifically asked defense counsel, do you want to respond to the government's guidelines arguments? And defense counsel says, no, we'll rest on our submission. So as far as the district court was concerned, the issue that was teed up for the district court to consider was whether under the 2023 guidelines, the prior conviction was a crime of violence. And the parties agreed that it was. And so there's no plain error here. No case has ever applied Taylor to the guidelines in this context such that there would be plain error for the district court to have applied the 2023 guidelines in this case. And so that resolves this case. Now, even if the court were to overlook that and to consider that, oh, maybe the district court should have applied the 2021 guidelines, the appellant still shouldn't succeed and the decision should be affirmed. And that's because if you go back and look at how the guidelines worked under the pre-2023 amendments regime, keep in mind we're looking at Guideline Section 2K2.1. We're not looking at the career offender guideline. Now, why is that important? Well, as this Court explained in the Chalice case earlier this year, if you look at 2K2.1, in the guideline itself it just says crime of violence. There's no definition. So how do we know what crime of violence means in 2K2.1? Well, the application note to 2K2.1 tells you what that means. And what it says is go over and take the definition that's in 4B1.2 and application note 1 to 4B1.2 and bring that full definition over and apply it here to this guideline. And so when you're looking at 2K2.1 under the 2021 guidelines, you do consider the application note as part of the definition of crime of violence for that guideline. And that's exactly what this Court recognized in Chalice. Now, Chalice also said no plain error. And so we should do it on that basis. But when it considered whether there was even an error to begin with, it made clear that the analysis under the 2021 guidelines has to take into account both the text of 4B1.2 in the guideline itself and application note 1, because the crime of violence definition for 2K2.1 brings in both of those. It's a package deal. And once you recognize that, you recognize that under either the 2021 guidelines or the 2023 guidelines, you get to the same result. An attempt to commit a crime of violence is a crime of violence when a district court is applying Section 2K2.1 and making a guidelines calculation. So the district court was absolutely correct under either version of the guidelines, both the version that the parties asked the district court to apply and the version that the appellant is now asking this Court to apply. You get to the same result. And then in addition to that, a third reason why the district court's judgment should be affirmed is the harmlessness analysis that the Court has already highlighted. And here, I think what the appellant is asking this Court to do is look for some sort of magic words. Basically, the district court has to say exactly something like, I would have made the same sentence regardless of the guidelines calculation. But I don't think that's what this Court's cases say. What they say is, you look at the record as a whole. You consider whether evaluating what the district court said about the reasons for the sentence it imposed, can this Court come to the conclusion that the sentence wouldn't have been different regardless of the guidelines? And here, I think the record clearly demonstrates that. Both of the times that defense counsel called to the district court's attention this guidelines dispute, and that's at Appendix 249 and Appendix 253, the district court responded in effect the same way, saying, even if I agreed with you, I would upwardly vary. Now, I agree that that's a little bit imprecise. But if you look at what Judge Falo was actually considering in imposing a sentence here, she was really considering the circumstances of this offense and the fact that the appellant had actually shot somebody on the streets of New York City. She was extremely concerned about that. And that was really what was driving the district court's sentencing analysis. And the district court was well aware of the dispute over the guidelines range when it was called to the district court's attention, indicated that it didn't really make a difference to the ultimate decision as to sentencing that the district court was going to impose. And so ultimately, even if this Court were to find an error, which it absolutely should not, it should conclude that any such error was harmless. And so for all three of those reasons, this is a case where affirmance of the sentence should be entered. If the Court has any questions, I'd be happy to address them. Just do you know what case in the queue, in the Bruin queue, is closest to this case? If you know. I was worried you would ask that. I'm not sure if there's also a case that's not on plain error review as to which the prior conviction is an attempted robbery. I – there are cases – Well, there have been cases on plain error review that have been decided. Yes. Because they're on plain error review. Yes. We're past that here. Right. And I'm saying – So my question is those other cases. I'm not sure if they're about this specific prior conviction. It's probably a fairer question for us. But thank you. Counsel? Sure. Okay. So I suppose Your Honors are in some of those panels. I know there's a lot of cases out there right now. And I'll – I will file a supplemental letter if I find anything that is helpful to the Court. Just very briefly, I'd like to get back to the preservation issue, because this is something that the government is really hammering here. One thing they haven't noted is that the – again, as I pointed out, that the 2023 amendment as to status points was made retroactive explicitly. It doesn't mean that the 2023 book was applied to everything. And that I think – I think we really need to get down to what book, what manual the Court used. In the PSR, on pages 3 and 8, the Probation Department stated that the 2021 version applied. That is paragraph 6A and 24 in the PSR. On page 247 of the appendix, the Court states, I agree with and adopt the calculations that are set forth in the pre-sentence investigation report. So the Court applied the 2021 book, the 2021 manual. That is the one that governs this. Again, you know, Judge Kearse, I understand that, you know, counsel made a mistake with the 2023, but this argument could never have been made had this been the 2023 book. And so I just really, really push back on this issue, Your Honor, as to the preservation. I think Your Honors really ought to grapple with this and really do this case. As for the 2K2.1 issue, so my friend brought up the fact that 2K2.1, which governs firearm offenses, its commentary explicitly incorporates the commentary, the career offender commentary. And I would argue that this is almost like a house of like commentary mirrors, you know, that if the career offender commentary that we're talking about here, which is 4B1.2, and I have a 2021 manual if any of Your Honors want it. No, I have 2021 in front of me. Well done, Your Honor. You know, if you look at that, what we're arguing is, is that the commentary to 4B1.2 itself is inconsistent with 4B1.2. So it is of no moment that 2K2.1 explicitly incorporates an inconsistent commentary. So that just makes it inconsistent, too. And it's almost like they're reflecting back at each other. And so we'd really ask this Court to reach this. This is not chalice. This is a different case. And this is also not harmless. Thank you, Your Honors. So could I understand that argument? Yes. You're saying that the guideline and the commentary are inconsistent. And therefore, when the commission imported them into 2K2.1, it did what? That that commentary of 2K2.1, which is itself, I believe, application note 1, that that application note, that commentary, is itself inconsistent. That that's reflecting, that it's doing nothing more than parroting or reflecting an inconsistent commentary that is inconsistent with the guidelines. And your claim or your argument that 4B1.2 text and commentary are inconsistent finds support in what case? In Taylor, Your Honor. In Taylor. Yep. Thank you.  Thank you. Both sides well argued. That concludes all the cases.